UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VONNIE SALISBURY,

      Plaintiff,

v.                                                                     Case No.  3:14-cv-789-J-MCR

CAROLYN W. COLVIN, Commissioner of
the Social Security Administration,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for a Period of Disability and Disability Insurance

Benefits ("DIB").  Plaintiff alleges she became disabled on June 10, 2011.  (Tr.

10.)  A hearing was held before the assigned Administrative Law Judge ("ALJ")

on November 19, 2012, at which Plaintiff was represented by an attorney.  (Tr.

40-65.)  The ALJ found Plaintiff not disabled from June 10, 2011 through January

4, 2013, the date of the decision.  (Tr. 10-18.)

In reaching the decision, the ALJ found that Plaintiff had the following

severe impairments: lumbar degenerative disc disease (with left leg sciatica),

atrial fibrillation status post ablation, and obesity.  (Tr. 12.)  The ALJ also found

that Plaintiff had the residual functional capacity ("RFC") to perform light work

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Doc. 9.)

with limitations.  (Tr. 13.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from June 10, 2011 through January 4, 2013.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into

2

account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff argues the ALJ erred in giving "little weight" to Dr. Dorsher's treating opinions and in finding Dr. Brigety's non-examining opinions generally persuasive when he assessed Plaintiff's RFC.  Defendant responds the ALJ properly evaluated the medical opinions of record and his RFC is supported by substantial evidence.

### A.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curium). *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

### B.    Relevant Evidence of Record

#### 1.    Mayo Clinic[2]

Plaintiff has been treated at Mayo Clinic since the summer of 2011. In July

---

[2] Only the more relevant medical records from Mayo Clinic are discussed herein.

2011, she was seen by Bryan Farford, DO, to establish primary care.  (Tr. 345.)

Plaintiff complained of worsening back pain and requested a refill of Celebrex.

(*Id.*)  Dr. Farford ordered X-rays to further evaluate her back pain.  (Tr. 348.)  The

lumbar spine X-rays showed degenerative disc disease.  (Tr. 358.)  More

specifically, the X-rays indicated: "Mild diffuse hypertrophic degenerative

changes.  6mm spondylolisthesis L5 on S1 with bilateral spondylolysis.  Multilevel

disc space narrowing greatest at L4-L5 and L5-L1."  (Tr. 370.)

In September 2011, Plaintiff reported that "she has had much better control

of her atrial fibrillation and has only had several episodes since changing to the

higher dose of her [F]lecainide."  (Tr. 339.)  On September 14, 2011, Plaintiff

underwent radiofrequency catheter ablation for her atrial fibrillation.  (Tr. 352.)

During her follow-up appointment in October 2011, it was reported that Plaintiff

continued to have arrhythmia and had two episodes since ablation lasting almost

an hour and daily episodes lasting five to ten seconds.  (Tr. 353.)  Plaintiff

reported difficulty with any type of exercise due to shortness of breath and back

pain.  (*Id.*)  During a subsequent visit on December 14, 2011, Plaintiff reported

her atrial fibrillation episodes were not as severe as before.  (Tr. 428.)  An EKG

performed that day revealed normal sinus rhythm.  (*Id.*)  Plaintiff was advised to

remain on her Flecainide to see if her healing continued.  (Tr. 429.)  Plaintiff

continued to report some atrial fibrillation through June 2012 but was generally

doing fine in that respect.  (Tr. 571.)

On December 1, 2011, Plaintiff saw Peter T. Dorsher, M.D.[3] following a

referral by Dr. Farford for her back and left leg pain.  (Tr. 391.)  Dr. Dorsher

noted:

> [Plaintiff] has a history of a rather significant water skiing accident 25
> years ago in which she flipped several times and was basically bed-
> bound with sciatica and 3 bulging disks noted.  She was treated by a
> family member who was a physiatrist until he passed a few years
> ago.  Over time, she has had problems with her back, occasionally
> going to her leg, but the main issue was that in the last 6 months, her
> back and leg pain have become a daily phenomenon and are
> starting to progressively limit her activity.  She did gain about 30
> pounds in 2008, after she stopped working, and now she can only sit
> for 15 minutes or walk on a treadmill for about 2 minutes before she
> gets back and leg pain.  She can walk quite a bit further if she is
> leaning on a grocery cart.  If she sits for more than 15 minutes, she
> will get sacral pressure.  Her back hurts her with turning in bed, and
> she really cannot carry anything due to aggravation of her back. . . .
> On closer questioning, she has not been able [to] walk long
> distances for about 4 years, but it has really been in the last 6
> months that she has had a precipitous reduction in her ability to
> ambulate.  She has tried cortisone shots, which sound like trigger
> points, in her low back which would help her over the years, but the
> last set really did not help her at all.

(*Id.*)  Dr. Dorsher also noted that Plaintiff did "not get any regular exercise due to

her inability to walk."  (Tr. 392.)  At the time of the exam, Plaintiff was around 210

pounds on a five-foot-five-inch frame.  (*Id.*)  She walked with a stiff-back pattern,

her knee jerks were diminished bilaterally, she was hyperlordotic, and facet

closure maneuvers were positive.  (*Id.*)  Dr. Dorsher stated:

Her plain films, which are personally reviewed with her from July 28

---

[3] Dr. Dorsher is Board Certified in Physical Medicine and Rehabilitation.  (*See* Tr. 240.)

of this year, do show rather marked L4-5 disk space narrowing and significant L5-S1 disk space narrowing, as well, with a grade 1 slip of L5 on S1 spondylolisthesis. . . . Though she does not have weakness, both her knee jerk reflexes are diminished, with no prior knee surgeries, suggestive of bilateral L4 radiculopathy, which would be consistent with her plain films that show marked disk space collapse at L4-5 and L5-S1 with grade 1 spondylolisthesis of L5 on S1. Given her marked activity limitation, being able to be on her feet only 2 minutes or walk on a treadmill for a couple minutes, her failure to respond to activity modification and anti-inflammatories, and her Coumadin status, I believe we should pursue lumbar MRI since clinically she has severe lumbar stenosis with bilateral L4 radiculopathies. Ultimately, she may need decompression and probably at a minimum is going to need an epidural, though this would require reversing her Coumadin, if Cardiology finds this plausible. She has been through extensive therapy in the past, under the direction of a physiatrist family member, and given the neurologic deficit and the degree of collapse on the plain films, I think most likely she is going to need a more aggressive intervention.

(Tr. 392-93.)

On December 21, 2011, Plaintiff underwent a lumbar MRI, which showed, in part:

Bilateral L5 pars defects with 4 mm anterolisthesis of L5 with respect to S1, no evidence of significant central spinal canal narrowing, moderate left and mild right foraminal narrowing. There is contact between left lateral disc bulging at L5-S1 and the exiting left L5 nerve root. Broad-based disc bulging eccentric to the right at L4-L5 causes mild right foraminal narrowing.

(Tr. 407, 484.)

During a follow-up visit on December 28, 2011, Dr. Dorsher noted, in relevant part:

Celebrex take [sic] sharp pain away but still buttock pain sitting and back [sic] after 20 minutes. She can only walk to mailbox and back

due to back 80% greater than left leg 20% pain.  Can't lift a bag of groceries.  Can't carry anything in front of her.  Sometimes cough or sneeze hurts.  She can walk further with pushing cart.

(Tr. 394.)

On January 23, 2012, Plaintiff had a one-time physical therapy session. (Tr. 395-98.)  The report provides that Plaintiff has previously utilized physical therapy, chiropractic treatment, heat, ice, a home exercise program, massage, massage therapy, stretching, a TENS unit, traction, and ultrasound for her back pain.  (Tr. 395.)  There was tenderness on palpation in her left lumbar area, her lumbar active range of motion was 50% of the normal limits, and her reported pain was 8 out of 10.  (Tr. 396.)  It was noted that Plaintiff was "unable to tolerate more activity due to pain."  (Tr. 397.)  It was also noted: "There does not seem to be much benefit from future therapy visits as everything else seems to aggravate her. [Plaintiff] may benefit from it in the future if pain clinic helps lessen her pain." (*Id.*)

On January 30, 2012, Plaintiff saw Michael Osborne, M.D. for a possible epidural steroid injection.  (Tr. 472.)  On examination, Plaintiff had absent knee jerk reflexes and depressed ankle jerk reflexes.  (Tr. 473.)  Dr. Osborne personally reviewed the lumbar MRI with Plaintiff.  (*Id.*)  His impression was left L5 radiculopathy, mechanical back pain, and bilateral L5 spondylolysis.  (*Id.*)  Dr. Osborne stated that Plaintiff was "a reasonable candidate for an epidural steroid injection."  (*Id.*)  Plaintiff underwent this procedure on February 22, 2012.  (Tr.

513.)

On March 9, 2012, Plaintiff had a neurosurgery consult with Stephen M.

Pirris, M.D.  (Tr. 466.)  On examination, Plaintiff was "able to ambulate on her

toes, heels and tandem with slight difficulty" and "had a positive straight-leg raise

on the left side with immediate recreation of her pain down her leg."  (Tr. 466-67.)

Dr. Pirris stated:

> I personally reviewed her imaging that is available on the Mayo
> system.  She had MRI of the lumbar spine from December 21, 2011.
> This shows a grade 1 L5 on S1 anterolisthesis with bilateral pars
> interarticularis defects.  There is bilateral nerve root compression but
> it is more severe on the left side.  There is also a central disk bulging
> at L4-5 with early Modic changes in the adjacent endplates but no
> significant central canal stenosis.  Lumbar spine x-ray on July 28,
> 2011, without any dynamic imaging.  Further shows the disk
> degeneration at L4-5 as well as the disk degeneration and
> spondylolisthesis at L5-S1 with spondylolysis of the pars
> interarticularis bilaterally.

(Tr. 467.)  Dr. Pirris's assessment provides in relevant part:

> MRS. SALISBURY HAS A DEBILITATING PAIN RADIATING FROM
> HER BACK DOWN HER LEFT LEG CONSISTENT WITH HER
> ANATOMICAL CHANGES OF SPONDYLOLISTHESIS AND NERVE
> ROOT COMPRESSION.  THIS HAS CAUSED HER TO HAVE
> MARKEDLY DIMINISHED ACTIVITIES AND SHE HAS
> CONTINUED EATING AT THE SAME RATE AND, THEREFORE,
> SHE HAS CONTINUED TO GAIN WEIGHT. . . . I think that she
> would require a decompression and instrumented fusion to cover at
> least L5-S1.  Because of her obesity and increased sacral slope, she
> may have to include L4 into the construct to give better stabilization
> and increase the chance of healing it appropriately.  I will better
> determine this after a scoliosis x-ray to judge her overall spinal
> balance as well as a lumbar spine flexion-extension x-ray.  The
> patient will work on her diet. . . . I told her that she is a reasonable
> surgical candidate but that not only is there any surgery that can be

9

> guaranteed to be her last, but also there is no surgery that can be guaranteed to remove all of her pain. . . . I explained that if she develops a foot drop, then surgery needs to be done on a more urgent basis.

(*Id.* (emphasis in original).)

On March 13, 2012, Plaintiff had a subsequent visit with Dr. Dorsher.  (Tr. 465.)  Dr. Dorsher stated:

> She has epidural which helped for two weeks with pressure rather than pain but now back to baseline.  She is really not able to do anything around [the] house . . . .  Hard to walk to mailbox and has to lean on cart to shop. . . . I think she is quite impaired and likely needs surgery but Dr Pirris would like her to lose 30-50 lb first.  Will contact Dr Farford about referring her for Optifast or other weight loss interventions.

(*Id.*)  In an addendum to the same visit, Dr. Dorsher stated: "She can only sit 30 minutes before back and leg hurts and then it is very hard for her to move due to pain and stiffness.  Standing 10 minutes only[.]"  (*Id.*)

On March 13, 2012, Dr. Dorsher completed a questionnaire, in which he opined that Plaintiff is unable to meet the demands of any work on a regular and consistent basis due to her impairment.  (Tr. 452.)  He explained: "She has L45 + L5S1 degenerative disc disease + [left] leg sciatica limiting sitting to 30" max, stand + walk 10". This plus age + [atrial fibrillation] limits her vocational potential (i.e. no meaningful gainful employment)."  (*Id.*)

On March 14, 2012, during a subsequent visit for her atrial fibrillation, Plaintiff was advised to begin weaning her Flecainide since she had not had

further episodes of atrial fibrillation since December of 2011.  (Tr. 463.)  It was noted that Plaintiff continued "to have lower back pain and this was evaluated for surgery but it [was] recommended that she lose at least 50 pounds prior to surgery being considered."  (Tr. 462.)

On April 24, 2012, Plaintiff had a bariatric nutrition assessment, during which she was diagnosed with class two obesity.  (Tr. 518.)  She had several subsequent visits for monitoring on a preoperative liquid meal replacement program, including on May 9, 2012, May 22, 2012, June 5, 2012, June 19, 2012, July 2, 2012, July 17, 2012, July 30, 2012, August 14, 2012, August 29, 2012, September 27, 2012, October 9, 2012, October 24, 2012, November 6, 2012. (Tr. 522, 525-30, 535-40, 559-64, 583-94, 708-10, 712-23, 733-35.)  On July 30, 2012 and subsequently, Plaintiff was assessed with class one obesity, improved from class two clinically severe obesity, among others.  (Tr. 530, 539-40, 710, 714, 718, 722, 735.)

## 2.    Reuben Brigety, M.D.

On March 26, 2012, Dr. Brigety completed a Physical RFC Assessment.[4] (Tr. 79-82.)  Dr. Brigety opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for four hours, and sit for more than six hours in an eight-hour workday.  (Tr. 80.)  Dr. Brigety further

---

[4] It was noted that "[t]here is no indication that there is opinion evidence from any source."  (Tr. 82.)

11

opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl; she could never climb ladders/ropes/scaffolds; and she should avoid even moderate exposure to hazards.  (Tr. 80-81.)

### C.    The ALJ's Decision

The ALJ found Plaintiff had the RFC to perform light work with limitations:

> She must have the option to alternate between sitting and standing every 30 minutes.  She can occasionally perform postural activities (bend, balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds).  Further, she can have no concentrated exposure to vibrations.

(Tr. 13.)

In making this finding, the ALJ gave little weight to Dr. Dorsher's March 2012 opinion because "it is inconsistent with the medical evidence of record as a whole."  (Tr. 16.)  The ALJ stated:

> While the claimant's medical records indicate that she has symptoms associated with her back, the evidence does not indicate that her doctors have placed any restrictions on her.  Additionally, her treatment has been conservative and although she is a surgical candidate, surgery has not been scheduled.  Further, as to Dr. Dorsher's opinion that the claimant's atrial fibrillation contributes to her limited vocational potential, the medical evidence, as well as the claimant's testimony, indicate that she has seen substantial improvement of her symptoms since the September 2011 ablation. Moreover, Dr. Dorsher's opinion is a legal conclusion left to me and is, therefore, not entitled to controlling weight or special significance (20 CFR 404.1527(d)(1) and SSR 96-5p).

(*Id*.)

With respect to the State agency non-examining consultant, Dr. Brigety, the

ALJ stated in part:

> Dr. Brigety found the claimant to be more limited than I have, with regard to standing/walking, sitting, exposure to hazards, and climbing ladders, ropes, and scaffolds.  I, however, have found that the claimant must have the option to alternate between sitting and standing every 30 minutes, and that she must avoid concentrated exposure to vibrations.  Despite these differences, I find Dr. Brigety's opinion to be generally persuasive because it is otherwise consistent with the [RFC] assessment above and the medical evidence of record.

(Tr. 17.)

### D.    Analysis

The Court agrees with Plaintiff that the ALJ erred in his evaluation of the medical opinions of record.  Although an ALJ may discount a treating physician's opinions if there is good cause to do so, in the present case, there was no good cause because the ALJ's reasons for giving Dr. Dorsher's opinions little weight are not supported by substantial evidence.

First, in rejecting Dr. Dorsher's opinions, the ALJ stated that while Plaintiff "has symptoms associated with her back, the evidence does not indicate that her doctors have placed any restrictions on her."  (Tr. 16.)  This statement is contradicted by the record, which shows that on March 13, 2012, Dr. Dorsher indicated that Plaintiff could sit for only 30 minutes and stand for 10 minutes at a time.  (Tr. 465.)  Also, in his questionnaire from the same date, Dr. Dorsher opined that Plaintiff was unable to meet the demands of any work, even sedentary work, on a regular and consistent basis due to her impairment.  (Tr.

452.)  Moreover, there was no real need for any restrictions because the record shows that Plaintiff stopped working in 2008, long before her symptoms worsened and she started treating at Mayo Clinic.  (*See* Tr. 45, 391.)

The ALJ also stated that Plaintiff's "treatment has been conservative and although she is a surgical candidate, surgery has not been scheduled."  (Tr. 16.) The record in this case shows that Plaintiff has tried numerous treatment options, including pain medications, cortisone shots, epidural steroid injections, massage, massage therapy, physical therapy, chiropractic care, TENS, heat and ice, a home exercise program, stretching, traction, and ultrasound.  (*See, e.g.*, Tr. 345, 391-93, 395-98, 472.)  Because the conservative treatment did not result in any lasting or satisfactory relief, Plaintiff was referred to Dr. Pirris for a neurosurgery consult and was told that she would require a decompression and instrumented fusion.  (Tr. 467.)  In fact, due to the severity of her condition, Plaintiff was advised that any back surgery could not be guaranteed to be her last and that it could not be guaranteed to remove all of her pain.  (*Id.*)

Importantly, the record indicates that the only reason for which the surgery has not been scheduled was to give Plaintiff an opportunity to lose weight based on the surgeon's recommendation for a better chance of recovery.  (Tr. 462, 467.) Plaintiff followed this recommendation by consulting with a bariatric specialist, following up on a regular basis, and eventually losing enough weight to be diagnosed with class one obesity, an improvement from her class two clinically

14

severe obesity.  Moreover, there is no indication that back surgery was no longer necessary or that conservative treatment alone would adequately alleviate Plaintiff's symptoms.  Therefore, the ALJ's statement that the surgery has not been scheduled does not take into account the circumstances of this case.

The ALJ also stated that Dr. Dorsher's opinion that Plaintiff's atrial fibrillation contributed to her limited vocational potential was inconsistent with the medical evidence and Plaintiff's own testimony, indicating that Plaintiff has seen substantial improvement since the September 2011 ablation.  (Tr. 16.)  Although Plaintiff's atrial fibrillation improved after the ablation, Plaintiff continued to have arrhythmia and episodes lasting almost an hour, continued to report difficulty with any type of exercise due to shortness of breath and back pain, and remained on Flecainide to control her symptoms.  (Tr. 353, 428-29, 571.)  It was not until the day after Dr. Dorsher completed his questionnaire on March 13, 2012, that Plaintiff was advised to begin weaning her Flecainide.  (Tr. 463.)  Even on March 14, 2012 when Plaintiff had a follow-up visit for her atrial fibrillation, it was noted that Plaintiff continued to have lower back pain and needed to lose weight prior to having back surgery.  (Tr. 462.)  Moreover, regardless of any improvement of Plaintiff's atrial fibrillation, Dr. Dorsher's March 13, 2012 opinion as to Plaintiff's vocational potential was based primarily on his treatment of her back and leg pain and the objective tests confirming the severity of her condition.  (*See* Tr. 452; *see also* 465.)

The ALJ's final reason for discounting Dr. Dorsher's opinion was that it constituted a legal conclusion under 20 C.F.R. § 404.1527(d)(1).  Pursuant to 20 C.F.R. § 404.1527(d)(1), "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  Because this is an issue reserved to the Commissioner, the Commissioner will not give any special significance to the source of such an opinion.  20 C.F.R. § 404.1527(d)(3).

Here, Dr. Dorsher did not merely state that Plaintiff was disabled or unable to work.  Rather, he opined that Plaintiff would be unable to meet the demands of any work on a regular and consistent basis due to her degenerative disc disease, left leg sciatica (limiting her sitting to 30 minutes, and standing and walking to 10 minutes), her age, and her atrial fibrillation.  (Tr. 452.)  Dr. Dorsher arrived at this conclusion after examining Plaintiff, reviewing her X-ray and MRI results, and seeing the outcome of conservative therapy.  Further, prior to rendering his opinion on March 13, 2012, Dr. Dorsher had access to the opinions of his colleagues – Dr. Osborne, the pain specialist who examined Plaintiff on January 30, 2012 and administered an epidural steroid injection on February 22, 2012, and Dr. Pirris, the neurosurgeon who examined Plaintiff on March 9, 2012 and opined that Plaintiff would require a decompression and instrumented fusion.

Based on the foregoing, the ALJ's reasons for giving Dr. Dorsher's opinions little weight are not supported by substantial evidence.  Therefore, this case will

16

be reversed and remanded with instructions to the ALJ to reconsider Dr.

Dorsher's opinions, explain what weight they are being accorded, and the

reasons therefor.  In the event the ALJ decides to reject any portion of Dr.

Dorsher's opinions, the ALJ must provide good cause therefor.  In light of this

conclusion and the possible change in the RFC assessment, the Court finds it

unnecessary to address Plaintiff's remaining argument that the ALJ erred when

he found the opinions of Dr. Brigety, a non-examining State agency doctor who is

actually an obstetrician, to be generally persuasive.  *See Jackson v. Bowen*, 801

F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL

1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the*

*Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

However, on remand, the ALJ will be directed to re-consider Dr. Brigety's

opinions as well.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** pursuant to sentence

four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a)

reconsider Dr. Dorsher's and Dr. Brigety's opinions, explain what weight they are

being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if

necessary, and (c) conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment consistent with this

Order and close the file.

3.     Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b).  Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees.  *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on July 9, 2015.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

18